May it please the court, I'm Clay Finley representing Ron and Lauren Parrish, Victor and Laura Craig, Casey and Chassie Laws, Rachel Seiberle, and their respective children. I'd like to acknowledge that the Parrishes, the Craigs, and Ms. Seiberle are here sitting on the front row. I want to thank them for their advocacy on behalf of their own children and really on I'll begin with what I think fundamentally both the hearing officer and the district court got wrong in this case. Where they focused their attention was at the moment of crisis. When these children are out of control, throwing a tantrum, kicking and screaming, of course at that time it may be necessary to restrain that child. It may be necessary to put him someplace where he can calm down. But that's the wrong time to focus on. The time to focus on is when that first act of defiance, the failure to comply, not following directives. It is at that moment where if the school district had done what the IDA required of it, if they had prepared a functional behavior assessment, if they had developed an appropriate behavior improvement plan based on that functional behavior assessment, and then if they properly implemented that plan, we would never get to the situation where we have a child kicking and screaming. Tell me if I follow you. Some children are always going to kick and scream. I was hyperactive. So help me. I don't follow the logic of that. Okay. Well, something happened before you started kicking and screaming. In your case, it may be that you were being defiant and disrespectful. It may be that the authority figure in that case appropriately expected you to comply because you are not a person with a disability. And that's where these children are different. These children have a disability that they cannot simply comply because you are an authority figure. You have to develop a relationship with these children based on respect, respect for them and their disability and their needs, and not a do it because I said so attitude. Now, I have kids, and I have told them many times to do something just because I told them to. Besides you and me testifying here, it's fun, but still, besides you and me testifying, what's your closest case that gives us guidance? Well, I don't think there's any, well, the case we cite is the Neosho case that kind of establishes the precedent that the failure to implement a behavior improvement plan can result in a denial of FAPE, free appropriate public education. So, you know, that's the case we're trying to come over. I think these cases are fact specific. And I think something that's important in this case that we did is in each of these four cases, we had a doctoral level board certified behavior analyst, Dr. Jason Travers, who prepared us, prepared reports. And I think, I beg you to take the time to read those reports. This isn't Knopf. This is somebody else. This is at the, in the due process case, we, there was also an expert. This was Dr. Jason Travers, as I said, a board certified behavior analyst. These are the people who are supposed to be able to know how to conduct a functional behavior assessment, know how to develop a behavior improvement. But we don't, we aren't the initial decision makers. We don't review these cases and that, at that level of detail. Well, I'm not sure. I'm not sure what the standard, what standard review are you now arguing is violated? Well, this court's standard of review of the overall decision is de novo. The hearing officer, I mean, the district court is a kind of. We don't de novo review the agency hearing. Well, that's true. Well, then don't, don't say, you know, this is, your brief does not come to grips with the restricted jurisdiction of the U.S. Court of Appeals being the fourth or fifth tribunal to review a massive record. Well, we don't go down and microanalyze what some experts said at the, at the agency hearing. Well, I don't think that's required. The. But I thought I heard you saying you got to be doing. Well, I think, I think to understand where the district was wrong. Now, Dr. Knopf's report, uh, you could read that and understand it as well, but, uh, Dr. Travers' reports, uh, explained it in, in much greater detail, exactly what the district. The district court said the, that the third grade worsening of behavior was addressed by a behavior support plan. Now, I don't know why, is that different than, than a functional behavioral assessment that you're talking about? Well, uh. Was it just a plan either that the parents didn't agree with and were overruled or it didn't work as a matter of hindsight? Well, it did not work, which is, which is proof of what we're saying is. No, it's not proof. Well, if you develop a, if you do a functional behavior assessment, develop an appropriate behavior improvement plan, you will not get misbehavior. Uh, you can, these can, kids can behave. Well, you can say that, counsel, but I don't believe it. Well, obviously, there are situations. There are, there are plans of all kinds and strikes in the, in the law and outside the law, and some of them don't work. Well. With the best intentions and the best crafted. Well, these were not with the best intentions. These were not the best crafted. Okay. This is a situation. Wait, who do I read in the, in the record for the lack of best intention, for bad intentions? You can read Dr. Knopf's report, where he says. No, no, no. He failed, they failed to comply with accepted professional practices. That's not bad intentions. Bad intentions change, change the landscape entirely. What, what testimony by a, by a Bentonville school district official should I read to, to, to understand that there were bad intentions, bad motive here? Well, they did not admit that they had a bad motive. You can look at it by their, judge it by their actions. If you fail over and over and over and over and you don't change, that is bad faith. Sounds like Congress and the budget process to me. You can, you cannot say I acted in good faith if I fail, make no change, fail, make no change. Every day that these kids throw a fit, have a tantrum. I thought it was 48 days, the period we're talking about, at least with one of them. Well, that was one school year. We were 48 days into the third grade. We had a whole second grade year where he misbehaved, threw tantrums, they hid it from the parents, didn't produce any reports. Those are, you know, if you want to, you know, the, the Seiberle case I think is, is you, a good one on bad faith because they in fact filed a complaint with the Arkansas Department of Education and then the district responded after that by not producing any more reports of the restraint and seclusion. That is evidence of bad faith. I need to reserve the balance of my time. Thank you. Ms. Arthurton. Good morning. May it please the court. I'm Angela Arthurton and I represent Appalee, the Bentonville School District. On behalf of the school district, I request this court affirm Judge Holmes' decision below. Judge Holmes properly granted summary judgment as to the Seiberle and Laws Appellant's claims because they failed to exhaust administrative remedies. Judge Holmes conducted an independent review of the expansive, as you described it, Judge Loken, hearing records for the Parrish and Craig Appellant's due process hearings and correctly found, as the hearing officer had, that L. Parrish and A. Craig were provided a free appropriate public education or a FAPE. Last, the district court's decision to exclude Appellant's expert was well within the substantial discretion that Rule 37 affords district court judges. I'd like to begin by addressing the Parrish and Laws Appellant's FAPE claims under the IDEA Act and point out that the standard of review, as referenced earlier, is de novo, but the factual findings of the district court only can be disregarded if they are clearly erroneous. So the standard really is clear error for the factual findings and the district court addressed all of the factual findings that the hearing officer had, some in less detail than the hearing officers, but there is support in the expansive record for each of those decisions. None of them is clearly erroneous and for that reason we ask that those decisions be affirmed. I ask the other side, what's the closest case? I think part of the problem here is that there are four very different cases crammed into one. I would say for the Parrish Appellants, I would say Neosho versus Clark and MMV Lancaster County Schools. In Neosho versus Clark, this court, and I think Judge Logan that may have been your opinion, reversed the district court, but the district court had reversed the administrative panel that had decided it. The district court didn't set forth the appropriate standard of review and didn't analyze the decision or the factors that went into the administrative panel's decision. That was the reason that this court reversed. It found that the hearing, the administrative body had gotten it right. Then in MM, this court affirmed the district court's decision that the student had been provided a FAPE. I think both of those are similar because they both had dealt with, well, Neosho versus Clark dealt with a child with autism and it's factually more on point and then MM, I think, is more procedurally on point with where this case is at. For the Craig Appellants, I don't know that there is a case that squarely fits factually, procedurally. I'd say it's MM as well. I just have a question about the standard of review. The standard of review ultimately on whether or not there is a free and appropriate public education is de novo. Clearly erroneous for the findings of fact on the judge that underlie that. The district judge was bound by a duty to give significant deference to the administrative officer who made the findings at the hearing level because judges are not trained as educators and therefore deference should be given to the findings of the professionals. Now, that's how I understand the standard of review to be. Am I right on that? Yes, Your Honor. All right. The judge had to give appropriate deference to the original finder of fact. The trial judge. And then we review his factual determinations if he did that for plain air. Now, if he substituted his own notions for what the original hearing officer found, then we could say that those are clearly erroneous, right? But short of that, we look at what the judge found, the district judge found, and we look at whether or not that's sustainable on the record below. Yes, Your Honor. That's correct. That is, was a free and appropriate education provided de novo? Yes. And to that point, the judge did go through, the district court judge did go through many pages, I think like 70 pages of analysis for these claims. And there was, to my memory, there was one major issue that he disagreed with the administrative hearing officer on. Beyond that, he, the opinion lays out the facts and the law and then concludes that the decision below was correct. The one issue that he disagreed with her on that comes to mind was for the, I can't remember whether it's the parish or the Craig appellants, but whichever it was, the child had been placed in a classroom that was not the classroom that his IEP provided for on the day before the student was withdrawn. And the hearing officer, the hearing, the final decision in order that the hearing officer entered kind of glossed over that and didn't address whether that was placement without parental input. And so the district court judge analyzed that, found that it was placement without parental input, but that it did not deny the child a free, appropriate public education because it was one day before the child was withdrawn and there was a meeting, an IEP meeting the subsequent day. You know, Mr. Fenley never really got to the question about whether or not it was appropriate to strike Dr. Knopf's report. And I believe he probably would have had some things to say about it because in his brief he asserts that the remedy was unduly made the loss of the case ultimately unavoidable. And of course, Judge Holmes in addressing it really relegated the discussion of that to a single footnote. Now, if you look at his opinion where he struck it, the question that I've got really is fairly narrow, even though it's taken me a long time to lead into it, is this, is that when you look at striking the expert's opinion and it actually deprives the party of its major claim, that's a fairly harsh remedy. And given the fact that there was still three months, I believe, until the trial date was to arrive, wouldn't a more appropriate remedy have been continuance, force a short period of time to make the witness available for a discovery deposition at the plaintiff's expense? And why is it not an abuse of discretion in light of our other case law that kind of says that when you take, that the remedy must be tailored to the harm? Sure. I'm glad you asked. It was not an abuse of discretion. And if you combine the order excluding Dr. Knopf with the Rule 60 order, the first post-judgment order that the district court entered, it was not an abuse of discretion for two reasons. The order lays out that a different solution, a lesser sanction was considered and he found it to be inappropriate. And that is reviewed for an abuse of discretion. And he sets forth the factual findings that carefully review the summary judgment order, there is perhaps one claim that doesn't fail anyway. Which one is that, counsel? Which claim is it? The Parish Appellant Section 1983 claim. Thank you. The Craig Appellant Section 1983 claim was, there was not a substantial departure from accepted professional practices because restraint and seclusion, as they label it, or the use of a cool-down room and removing the child from the situation as the district sees it, was permitted in that student's IEP. As to both appellants' equal protection claims, there was no comparator and there was no argument that staff and student safety is not a legitimate governmental interest. And to the 504 claims, that order specifically addresses why that doesn't, why the facts don't meet that standard there. Did Dr. Knopf's report meet the requirements of Rule 26 in your opinion as far as the disclosures and the opinions, the basis for his opinions? No, I don't believe Dr. Knopf's, the disclosure of Dr. Knopf's opinion met the requirements of Rule 26 requires the disclosure of an expert report and also provides that an expert may not be deposed until after the report is disclosed. And so if you disclose an expert with one day left in discovery, he can't be deposed. I appreciate that. My question was a little different. As I read the report of Dr. Knopf, there seems to be a statement of opinions, but Rule 26 requires more than just a mere statement of the opinions. It requires you to have a factual basis for each of the opinions held. My question is, do you think that the opinion reached that exacting standard? I see. No, I do not. And that was addressed in our motion in limine that the judge decided was moot in light of his prior ruling. Thank you. As my time has expired, thank you. On behalf of the appellee, we request you affirm. Thank you, counsel. Thank you, Judge Erickson, for that question concerning Dr. Knopf's report. And I would like to say, you know, Dr. Knopf is the expert. We're lawyers. And Dr. Knopf's opinion as a certified psychologist is that the conduct of the school district, in this case, fell below the standard. In the appendix, page 390 of the appendix. Your time is so short. Does that only affect one claim? It affects all of our claims, all the our discrimination, section 504 claims. I want to point out something on Dr. Knopf. They moved to compel Dr. Knopf's report before we had a change in the schedule. And the order in that finding that motion moved at that time said if plaintiffs do not timely present themselves or any expert witnesses for deposition, the district defendants may renew their motion. So the expectation was they were going to renew their motion to compel. That was never done. So to say then that we failed to produce him when they never moved to require us to produce him, I think is unfair. And I think the district court in this case, you know, failed to take that into account when it decided that our report was not timely. And my time's expired. If the court doesn't have any further questions, I'll sit down. Thank you very much. This case has been thoroughly and well briefed and argued. It's complex and important. I take it under advisement.